**Dennis GODDARD and Bonnie Goddard, Plaintiffs–Appellees,**

v.

**Pete URREA, Gene Ford, Defendants–Appellants.**

No. 87–8501.

United States Court of Appeals, Eleventh Circuit.

June 20, 1988.

G. Thomas Davis, Lawson & Davis, Lela L. Smith, Atlanta, Ga., for Urrea.

O. Hale Almand, Jr., Sell & Melton, Russell M. Boston, Macon, Ga., for Ford.

Scott McLarty, Athens, Ga., for plaintiffs-appellees.

Before JOHNSON and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this unusual case of an appeal from denial of a motion for summary judgment based on qualified immunity, we dismiss the appeal for lack of jurisdiction because genuine issues of material fact exist.

## FACTS

On October 22, 1984, the appellants, Pete Urrea and Gene Ford, agents of the Bureau of Alcohol, Tobacco and Firearms, Treasury Department, served a subpoena on Dennis and Bonnie Goddard, husband and wife, the appellees. On the same date, Agent Ford assisted Urrea in serving a total of four subpoenas in the Atlanta area. The subpoenas were issued in connection with a nationwide grand jury investigation being conducted in California concerning the manufacturing of firearms and accessories. The subpoena served on the Goddards was issued to their business, Guerin Enterprises.

It is undisputed that the agents served a subpoena upon the Goddards with a letter attached which explained options for compliance with the subpoena. The facts concerning the agents' actions after serving the subpoena are in dispute.

The agents' rendition of the facts are as follows: Upon arrival at the Goddard residence, Urrea, accompanied by Ford, served the subpoena on Bonnie Goddard, the wife. Agent Urrea told Bonnie Goddard that the document was a subpoena and explained to her compliance options, which were to deliver the requested records to the agents in Atlanta immediately, or to produce the records personally in Fresno, California, where the grand jury was in session. Bonnie Goddard then called her husband, Dennis, to advise him of the incident, but was unable to reach him. Agent Urrea then asked Bonnie Goddard the location of Guerin Enterprises, and she showed the agents its location in the basement of the house. The agents remained in the basement while Bonnie Goddard returned to the kitchen. Subsequently, Dennis Goddard returned Bonnie's call, and she advised him that the agents were present and had a search warrant. Agent Ford immediately corrected Bonnie by telling her the document was not a search warrant. Agent Urrea then spoke with Dennis Goddard and told Dennis that Bonnie had been served with a subpoena and explained to Dennis Goddard the compliance options. After the conversation with Dennis, the agents asked to see business receipts. In response to this request, Bonnie Goddard gave the agents a box containing shipment receipts from Guerin Enterprises. Again, Bonnie Goddard gave the agents permission to enter the basement. This time, Urrea found additional business records and metal parts used to make firearm silencers. The agents then asked Bonnie to telephone Dennis in order to arrange a meeting. At the meeting, Dennis Goddard agreed that Urrea could take the documents to California.

The Goddards' rendition of the facts are as follows: The Goddards contend that Agent Urrea failed to mention that the document was a subpoena and did not explain any of the compliance options. Bonnie Goddard says that Urrea told her the document was a search warrant. The agents then asked the location of Guerin Enterprises, and Bonnie Goddard escorted

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

them to the basement where the business records were located. After she unsuccessfully attempted to contact Dennis, he returned her telephone call, and she advised him that the agents had served a search warrant. Although Agent Ford told her that the document was not a search warrant, he did not tell her that it was a subpoena. Urrea then spoke with Dennis on the telephone and mentioned the federal grand jury investigation and the "gag order," but never described the document as a subpoena. Urrea then informed Dennis that he had in his possession the requested documents. Following the telephone conversation, the agents asked for additional business records and without Bonnie's permission, returned to the basement. At that point, Urrea found additional business records and seized two "display suppressors," used in manufacturing firearm accessories. Subsequently, Urrea arranged a meeting with Dennis to discuss what had been found. Dennis denies giving Urrea permission to transport the business documents to California.

## PROCEDURAL HISTORY

On December 11, 1984, the Goddards filed a 42 U.S.C. § 1983 action in the Superior Court of Cobb County for intentional infliction of emotional distress, trespass, and the unlawful search and seizure of their property. Subsequently, Ford and Urrea removed the case to federal court, pursuant to 28 U.S.C. § 1442(a)(1). On January 30, 1985, Ford and Urrea filed a motion to dismiss, or in the alternative for summary judgment. In support of the motion, Ford and Urrea asserted entitlement to immunity for common law torts and qualified immunity for constitutional tort liability. The Goddards sought leave of the court to amend their complaint, deleting the section 1983 claim and adding a *Bivens* action.[1] On June 17, 1985, the district court informed the parties that the agents' motion would be considered a motion for

summary judgment, and granted the Goddards ten days to file a response and to amend their complaint. On August 16, 1985, the district court granted in part and denied in part the agents' motion. The district court found that Urrea and Ford were immune from state common law tort liability; however, the district court denied summary judgment as to the Goddard's constitutional tort claim.

After discovery commenced, Urrea and Ford filed separate motions for summary judgment. On March 31, 1987, the district court denied both motions for summary judgment as to the constitutional tort claims. The court held that a genuine issue existed which impacted upon the agents' good faith or reasonableness. The district court found that if the agents falsely informed Bonnie Goddard that the subpoena was a search warrant, or only partially explained to Dennis Goddard the nature of the document and his compliance options, "a jury would be entitled to find that the defendant's search and seizure violated clearly established constitutional rights of which a reasonable person would have known." The district court denied Urrea's motion for reconsideration.

The sole issue in this appeal is whether the district court erred in denying summary judgment to the agents based on their qualified immunity claim.

## DISCUSSION

We begin with the familiar principle that in reviewing a question concerning summary judgment, this court must resolve all factual ambiguities in favor of the party opposing the motion. *Daniel v. Taylor*, 808 F.2d 1401, 1402 (11th Cir.1986); *Wilson v. Taylor*, 658 F.2d 1021, 1028 (5th Cir. Unit B 1981).[2] In *Anderson v. Creighton*, —— U.S. ——, ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 529–30 (1987), the Supreme Court recently reaffirmed the principles of

---

**1.** See *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See also Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

**2.** This court, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), adopted as precedent all Unit B decisions of the former Fifth Circuit.

qualified immunity. In *Creighton,* the Supreme Court held that an officer is entitled to summary judgment if a reasonable officer could have believed that the action comported with constitutional mandates, even though it actually did not. *Creighton,* — U.S. at ——, 107 S.Ct. at 3038, 97 L.Ed.2d at 529–30; *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 411 (1982). The Court noted that the qualified immunity doctrine applies to *Bivens* federal actions as well as 42 U.S.C. § 1983 actions against state defendants. *Harlow,* 457 U.S. at 819 n. 30, 102 S.Ct. at 2738 n. 30, 73 L.Ed.2d at 411 n. 30.

Qualified immunity provides a delicate balance between vindicating the rights of individuals and facilitating discretion of federal officials. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). When government officials abuse their discretion, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Creighton,* — U.S. at ——, 107 S.Ct. at 3037–38, 97 L.Ed.2d at 529 (citing *Harlow v. Fitzgerald,* 457 U.S. at 814, 102 S.Ct. at 2736, 73 L.Ed.2d at 408).

The agents contend that qualified immunity bars any constitutional tort claim for unlawful search and seizure. The district court held for the Goddards finding that the parties' factual allegations create a genuine dispute which bears upon the good faith or reasonableness of the agents' conduct.

In this case, the first inquiry is whether the Goddards have adequately alleged a violation of a clearly established right thereby warranting denial of summary judgment on immunity grounds. The resolution of this issue will necessarily entail consideration of the factual allegations that make up the Goddards' claim for relief. *See Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 426 (1985). The agents contend that they informed Bonnie Goddard that the document was a subpoena and fully explained to her

its compliance options. Bonnie Goddard contends that the agents falsely informed her that the subpoena was a search warrant and inadequately explained the compliance options. Although Agent Ford says he corrected Bonnie Goddard when she referred to the document as a search warrant, this assertion is disputed. According to the Goddards, Agent Ford stated merely that the document was not a search warrant, but did not state that it was a subpoena. The facts also show that the agents searched Guerin Enterprises' business records, seized documents, and seized metal parts used to make firearm accessories. The factual allegations in this case clearly establish a factual dispute which impacts on the reasonableness of the agents' conduct. Given the factual circumstances, a jury is entitled to find whether the agents' search and seizure of business records and materials violated established constitutional rights of which a reasonable officer would have known. *See Creighton,* — U.S. at ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court correctly denied summary judgment to the agents on the immunity question.

We acknowledge the agents' contention that the law regarding service of subpoenas with attached "gag orders" was not clearly established at the time of this case. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (where the unsettled law of wiretapping was dispositive to the Court's grant of qualified immunity); *see also Daniel,* 808 F.2d at 1403–05. That contention is to be resolved at a later time —when the facts have been established.

We also acknowledge Agent Ford's contention that he was merely assisting Agent Urrea in serving the subpoena. Bonnie Goddard contends that Agent Ford also failed to apprise her of the nature of the document. Although Agent Ford told her the document was not a search warrant, he failed to inform her that it was a subpoena. This also presents a factual question. A litigant's credibility and the weight to be given to testimony are matters for the consideration of a fact-finder. *See generally*

*Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Since we find, as did the district court, that factual issues exist, this appeal must be dismissed. *Riley v. Wainwright*, 810 F.2d 1006 (11th Cir.1986), teaches that denial of a motion for summary judgment based on a defendant's claim of qualified immunity is not a final appealable order if the claim is denied because the case requires "substantial factual development." *Riley*, 810 F.2d at 1007. Since we agree with the district court that genuine issues of fact remain which impact upon a finding of good faith or reasonableness, dismissal is compelled. It is of no moment that this court in an order dated September 25, 1987, denied the appellees' motion to dismiss the appeal on jurisdictional grounds. Oral argument serves its purpose when it clarifies events that occurred in the district court.

Accordingly, this appeal is dismissed.

DISMISSED.

JOHNSON, Circuit Judge, dissenting:

I dissent from the majority's dismissal of this appeal for lack of jurisdiction. In *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2818, 86 L.Ed.2d 411, 427–28 (1985), the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law," is appealable pursuant to the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536 (1949).[1] The *Mitchell* Court stressed that the qualified immunity defense not only served as a defense to liability, but operated as an immunity from suit. Consequently, the Court recognized that a defendant would lose the "immunity-to-suit" protection if the denial was unreviewable until after a final judgment. *See* 472 U.S. at 526–27, 105 S.Ct. at 2815–16, 86 L.Ed.2d at 425. Similarly, the Court also recognized that the district "court's denial of

summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations." *Id.* at 527, 105 S.Ct. at 2816, 86 L.Ed.2d at 425–26 (emphasis in original).

Finally, as relevant here, the Court observed that because

qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct[,] a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated. An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions.... [footnote 9]

*Id.* at 527–28, 105 S.Ct. at 2816–17, 86 L.Ed.2d at 426 (citation omitted). Footnote 9 provides: "We emphasize at this point that the appealable issue is a purely legal one: whether the facts alleged ... by the plaintiff ... support a claim of violation of clearly established law." *Id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9, 86 L.Ed.2d at 426 n. 9.

Because *Mitchell* permits appellate jurisdiction when the district court's denial turns on an issue of law, an appellate court cannot resolve factual disputes. But the above passage and accompanying footnote from *Mitchell* clearly demonstrate that the qualified immunity analysis does not require a resolution of factual disputes. Rather, that analysis assumes the validity of the plaintiff's version of the facts and then examines whether those facts "support a claim of violation of clearly established law." Consequently, the majority has erred by concluding that this appeal must be dismissed because factual disputes remain.

---

1. Appellate jurisdiction pursuant to the *Cohen* doctrine requires that the district court's decision (1) be effectively unreviewable on appeal from a final judgment, (2) conclusively determine the disputed question, and (3) involve a

claim of right separable from, and collateral to, rights asserted in the action. *See Mitchell*, 472 U.S. at 524–30, 105 S.Ct. at 2815–18, 86 L.Ed.2d at 423–28.

Similarly, the majority has misplaced its reliance on *Riley v. Wainwright,* 810 F.2d 1006 (11th Cir.1986). In that case, this Court reasoned:

> *Mitchell v. Forsyth* held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." In the present case the district court's denial of defendant's motion for summary judgment did not turn on an issue of law; the court denied defendants' claim of qualified immunity because the case required *substantial factual development* before it could be determined with finality whether Riley had been subjected to constitutional deprivation and, if so, whether some or all of the defendants were entitled to the benefit of qualified immunity. The district court's order is therefore not a final appealable decision.

*Id.* at 1007 (citations omitted) (emphasis added).

*Riley* does not apply to the present case for two reasons. First, the district court's denial in the present case clearly turned on an issue of law:[2]

> If, as the plaintiffs contend, the defendants falsely informed Mrs. Goddard that the subpoena was a search warrant and only partially or obscurely explained to Mr. Goddard the nature of the document

and his compliance options, a jury would be entitled to find that the defendants' subsequent search and seizure violated clearly established constitutional rights of which a reasonable person would have known.

District Court opinion at 6.[3] Second, discovery has been completed in the present case and thus no substantial factual *development* remains. Certainly, factual *disputes* remain, but these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts.

Because resolution of this appeal turns on an issue of law and no substantial factual development remains, I would hold that this Court has jurisdiction to address the merits of this appeal. After all, the qualified immunity defense affords defendants a right not to stand trial and "[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred." *Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651, 660 (1977). Accordingly, I would address the "purely legal [issue of] whether the facts alleged ... by the plaintiff ... support a claim of violation of clearly established law." *Mitchell,* 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9, 86 L.Ed.2d at 426 n. 9.

**2.** *See Rich v. Dollar,* 841 F.2d 1558, 1561 & n. 1 (11th Cir.1988) (distinguishing *Riley* because district court determination turns on issue of law).

**3.** Although the majority fails to address the issue, I believe it necessary to point out that the district court erred when it alternatively held that questions concerning the defendants' *subjective* beliefs precluded summary judgment. *See* District Court opinion at 6–7. In *Barker v. Norman,* 651 F.2d 1107, 1126–27 (5th Cir. Unit A June 1981), this Court's predecessor recognized that a plaintiff could survive a defendant's summary judgment motion based on qualified immunity if the plaintiff demonstrated, for summary judgment purposes, a lack of objective or *subjective* good faith. The subjective component was met if the plaintiff articulated some "objective circumstances that could serve as a rational basis from which a factfinder could

infer that the defendant acted out of malice rather than duty." *Id.* at 1127.

The district court erred in its reliance on the "subjective component" part of the *Barker* opinion. In the post–*Barker* case of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court, out of concern that too many frivolous claims were surviving defendants' summary judgment motions, eliminated the subjective component relied on by the district court in the present case and reformulated a purely objective test. *See, e.g., Flinn v. Gordon,* 775 F.2d 1551, 1553 (11th Cir.1985) ("In *Harlow* the Supreme Court established a purely objective test for qualified immunity...."), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986); *Barnett v. Housing Authority,* 707 F.2d 1571, 1581–82 (11th Cir.1983). *See generally Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (inquiry is objective).