**William C. BENNETT, aka John A. Richardson, Plaintiff–Appellee,**

v.

**Garrison A. PARKER, Warden, Robert M. Jackson, Officer, Daniel W. Cooper, Officer, Defendants–Appellants.**

No. 88–8939.

United States Court of Appeals, Eleventh Circuit.

April 25, 1990.

John C. Jones, Office of State Atty. Gen., Atlanta, Ga., for defendants-appellants.

John P. Batson, Augusta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge.

Although intertwined with issues of jurisdiction and qualified immunity, this appeal concerns the severity of injury to an inmate required to establish a constitutional claim of excessive use of force. Because we find no constitutional violation in that the injury in this case was minimal or nonexistent, we reverse the district court's denial of summary judgment on motion of the public officials.

## I. FACTS

William C. Bennett, a/k/a John A. Richardson, an inmate at Augusta Correctional and Medical Institution, in Georgia, brought this action pursuant to 42 U.S.C. § 1983 against Prison Warden Garrison Parker and prison staff officers Robert M. Jackson and Daniel W. Cooper (appellants). Bennett alleges that on July 13, 1987, at approximately 1 p.m., Jackson and Cooper instructed him to clean up his cell. After Bennett cleaned the cell, Jackson and Cooper refused to allow Bennett to go to the gymnasium as they had earlier promised. When Bennett asked Jackson why he was

not being allowed to go to the gymnasium, Jackson replied, "You shut your goddamn mouth," and "I don't have to let you go no goddamn where." Officer Jackson then called Bennett out of the cell, grabbed him by the throat, and said, "Let me tell you something you black ass mother-fucker, I am sick and tired of your goddamn mouth; furthermore nigger, I've had it with you." When Bennett began to struggle, and asked Jackson to remove his hands, Cooper pushed Bennett against the cell bars. According to Bennett, Jackson hit Bennett with a nightstick on the left side of his head, near the eye. Bennett claims that he sought medical treatment later that evening, but the medical staff denied him treatment. The injury to his left eye is still painful. Bennett also alleges that he was denied due process during grievance procedures.

The appellants state different facts. They allege that while Jackson and Cooper were conducting a count of the inmates, Bennett became belligerent and demanded to go to recreation. He began cursing at the officers and creating a disturbance. When Bennett refused to calm down, Jackson and Cooper ordered him outside of his cell into the hallway. Jackson and Cooper state that they never touched Bennett, and therefore they never filed a use of force report. Such a report is mandatory in incidents where force is used. Although sick call is held everyday, Bennett never went to the prison hospital or reported the injury he now alleges.

Because of this disorderly behavior, Bennett received a disciplinary report for insubordination, failure to follow instructions, and disruption of the count of inmates. Bennett pleaded guilty to these charges at a disciplinary hearing.

## II. PROCEDURAL HISTORY

Bennett filed this section 1983 lawsuit in the Northern District of Georgia claiming that the appellants violated his constitutional rights through an excessive use of force and failure to provide due process. The appellants filed a motion to dismiss based on the defense of qualified immunity.

The district court notified Bennett that it would treat the motion to dismiss as one for summary judgment and advised Bennett of the consequences of a summary judgment motion. In response, Bennett submitted two sworn statements and five unsworn statements from inmates. The district court dismissed the claims against Parker, the warden, finding that the claims against him were based on the doctrine of *respondeat superior.* The district court denied the motion for summary judgment for Jackson and Cooper because it found that material issues of fact regarding excessive use of force were in dispute. Consequently, the district court rejected the qualified immunity defense.

## III. CONTENTIONS OF THE PARTIES

Jackson and Cooper contend that the district court erred by denying their motion for summary judgment. They argue that although they did not use any force, the undisputed facts show that they were entitled to use force against Bennett and, if force was used, Bennett was not injured. As a threshold issue, Bennett contends that the court has no jurisdiction over this appeal because material facts are in dispute. Bennett argues that no force was necessary under the circumstances.

## IV. ISSUES

The issues before the court are: (1) whether the court has jurisdiction over this appeal resulting from the denial of summary judgment based on qualified immunity; and (2) whether the district court properly denied Jackson and Cooper's motions for summary judgment.

## V. DISCUSSION

A. Jurisdiction

The United States Supreme Court has held that the appellate courts have jurisdiction over "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, [and that it] is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."

*Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Whether an official is entitled to qualified immunity is an issue of law. *Waldrop v. Evans,* 871 F.2d 1030, 1032 n. 1 (11th Cir. 1989). Nevertheless, this court has consistently held that denial of a motion for summary judgment based on a claim of qualified immunity is not a final appealable order if the claim is denied because the case turns on factual questions in dispute. *Goddard v. Urrea,* 847 F.2d 765 (11th Cir. 1988); *Williams v. Cash,* 836 F.2d 1318 (11th Cir.1988); *Riley v. Wainwright,* 810 F.2d 1006 (11th Cir.1986); *Perry v. Thompson,* 786 F.2d 1093 (11th Cir.1986).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

■ The doctrine of qualified immunity accomplishes a similar purpose by shielding public officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S.

800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, in this case, for Bennett to defeat Jackson and Cooper's motions for summary judgment, he must show that their conduct violated clearly established statutory or constitutional rights. *See Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir.1989) (burden of proving constitutional violation on plaintiff).[1] Because we hold that Bennett failed to establish a constitutional violation, rendering immaterial any facts still in dispute, we have jurisdiction.

**B.  Denial of Summary Judgment**

On review of the denial of summary judgment based on qualified immunity, to determine whether a plaintiff has sufficiently established a constitutional violation, we follow the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. If the facts taken in the light most favorable to the plaintiff do not establish a constitutional violation, then the public official should be granted summary judgment as a matter of law. *Brown v. Smith,* 813 F.2d 1187, 1188 (11th Cir.1987). Our review of the denial of summary judgment based on qualified immunity is plenary. *Waldrop v. Evans,* 871 F.2d at 1032 n. 1.

Bennett contends that Jackson and Cooper violated his constitutional rights through the use of excessive force. The eighth amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to a "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (citations omitted). The Court found in *Albers* that the determination of whether a prisoner has suffered unnecessary and wanton pain turns on "whether force was applied in a good faith effort to maintain or restore

---

1. On motion for summary judgment, Bennett *could not rely solely* on allegations in the pleadings to establish a constitutional violation.

   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.
   Fed.R.Civ.P. 56(e).

discipline or maliciously and sadistically for the very purpose of causing harm." 475 U.S. at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). In *Albers,* the Court also adopted three factors set forth in *Johnson v. Glick* for determining whether a prison guard has used excessive force: the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted upon the prisoner. *Whitley v. Albers,* 475 U.S. at 321, 106 S.Ct. at 1085.

In *Brown v. Smith,* 813 F.2d 1187 (11th Cir.1987), this court recently used these three factors to determine whether a prison guard's conduct constituted excessive use of force. We found that force was needed because undisputed evidence showed that Brown had refused to enter his cell when Smith, the guard, ordered him to do so. Smith put his riot baton against Brown's neck and pinned him against the wall; another officer then assisted Smith in putting Brown back into his cell. Under these circumstances, we found that the amount of force used was justified. We also found that because Brown's affidavit contained only a conclusory allegation of serious injury without any other supporting evidence, the allegation should be discounted. Accordingly, we concluded that Brown suffered, at most, a minimal injury.

■ Analyzing this case according to the same factors used in *Brown,* we conclude that Bennett has not established a constitutional violation. The need for the use of force is established by the undisputed evidence that Bennett created a disturbance. As a result of this incident, Bennett pleaded guilty to disciplinary charges for insubordination, for failure to follow instructions, and for disrupting the count of inmates. We give a wide range of deference to prison officials acting to preserve discipline and security. *Brown v. Smith,* 813 F.2d at 1188.

In evaluating the relationship between the need and the amount of force used, we weigh the prison's security interest in maintaining order against the force used against Bennett. Although the affidavits of other prisoners attest to the fact that Jackson and Cooper grabbed Bennett by the throat and pushed him against the bars, no other evidence supports his claim that Officer Jackson struck him with a nightstick. Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Johnson v. Glick,* 481 F.2d at 1033. Decisions made at the scene of a disturbance to restore order are entitled to a degree of deference.

Bennett claims that a blow to the head near his left eye caused him considerable and long-lasting pain. Yet, Bennett's medical records contain no report of head injuries or treatment for pain following the incident, even though he had daily opportunities to seek medical assistance.

In order to survive a motion for directed verdict at trial, Bennett would have to support his claim of excessive use of force by showing "severe injuries," as required by this court in *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir. Unit A 1981). *Cf. Norris v. District of Columbia,* 737 F.2d 1148 (D.C.Cir.1984) (if use of force unjustified, substantial immediate pain with lingering ill effects states a constitutional violation). "The degree of force exerted and the extent of physical injury inflicted that together amounts to a constitutional deprivation must, of course, be determined by the facts of a given case." *Shillingford,* 634 F.2d at 265. While we do not require that a prisoner sustain a permanent injury, the prisoner must offer some evidence of injury beyond a minimal one. *See Brown v. Smith,* 813 F.2d at 1189 (conclusory allegations in inmate's affidavit discounted absent corrobo-

ration); *cf. Williams v. Cash*, 836 F.2d 1318 (11th Cir.1988) (inmate's elbow broken); *Perry v. Thompson*, 786 F.2d 1093 (11th Cir.1986) (prisoner bled after allegedly being struck in face, head, arms, legs, and kicked in the sides and head).

As in *Brown*, Bennett's claim of serious injury is only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses, and we therefore discount it. If Jackson and Cooper struck Bennett, the injury was minimal.

When faced with a motion for summary judgment based on a defense of qualified immunity, the district courts should first focus on whether the plaintiff has established a constitutional violation before determining whether material issues of fact are present. No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation.

## VI. CONCLUSION

We conclude that the amount of force used was appropriate based on the prison's security interests in maintaining order and the minimal injuries Bennett sustained.[2] Accordingly, viewed in the light most favorable to Bennett, the evidence will not support a reasonable inference of wantonness in the infliction of pain.

For the foregoing reasons, we hold that this court has jurisdiction and that the district court improperly denied the defendants' motion for summary judgment. The decision of the district court is therefore reversed, and the case remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

**2.** We leave for another case the decision whether highly provocative language, such as alleged in this case, when proved, may render unconstitutional any force used to subdue an inmate's reflexive reaction.

**1.** A panel of the Eleventh Circuit, finding jurisdiction to review the rejection of a qualified immunity defense although facts were in dispute, recently stated that "factual *disputes* do not affect qualified immunity analysis since 'that analysis assumes the validity of plaintiff's version of the facts and then examines whether those facts support a claim of clearly established law.'" *Horlock v. Georgia Dep't of Human Resources,* 890 F.2d 388, 392–93 (11th Cir.

TJOFLAT, Chief Judge, concurring:

I concur in the result reached by the court today and agree with much of the court's opinion. I write separately because I question the court's characterization of our circuit's precedent regarding our jurisdiction to review a district court's denial of a motion for summary judgment based on qualified immunity. The court states: "[T]his court has consistently held that denial of a motion for summary judgment based on a claim of qualified immunity is not a final appealable order if the claim is denied because the case turns on factual questions in dispute." *See ante* at 5. Because the problem continues to surface in this circuit,[1] I find it appropriate to say a few words on this issue.

Generally, unless an issue is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1982), a court of appeals has jurisdiction, pursuant to 28 U.S.C. § 1291, to review only final decisions of the district courts. *See Flinn v. Gordon*, 775 F.2d 1551, 1552 (11th Cir.1985), *cert. denied*, 476 U.S. 1116, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986). We may, however, review decisions that, although not final in the sense that they terminate the cause of action, "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The qualified immunity defense protects such a claim of right, i.e., that of an official, who has acted rea-

1989) (emphasis in original) (quoting *Goddard v. Urrea,* 847 F.2d 765, 769 (11th Cir.1988) (Johnson, J., dissenting)). Because *Horlock* conflicted with earlier panel decisions, *see, e.g., Goddard,* 847 F.2d at 768–69, the case has been voted en banc to resolve the divergence of authority, and the panel opinion has been vacated, *see Horlock v. Georgia Dep't of Human Resources.* The case, however, has since been settled, and a motion to dismiss the appeal has been granted, *see* order of March 28, 1990; therefore, the case will not be reheard en banc, but the panel opinion will remain vacated. *See Dunn v. Blue Ridge Tele. Co.,* 888 F.2d 731 (11th Cir. 1989) (en banc).

sonably and in good faith within the scope of his or her discretionary authority, to avoid any litigation of the plaintiff's allegations. *Mitchell v. Forsyth*, 472 U.S. 511, 527–28, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). The claimed entitlement is an *"immunity from suit ...*; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2815 (emphasis in original). Consequently, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law,[2] is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291...." *Id.* at 530, 105 S.Ct. at 2817.

When the district court *grants* a pre-trial motion based on a qualified immunity defense, our jurisdiction is unquestioned: the decision is clearly a "final decision" within the meaning of section 1291 in that it terminates the action altogether.[3] On review,

---

**2.** The *Mitchell* court's phrase, "to the extent that it turns on an issue of law," requires some explanation. In *Mitchell*, "[t]he question of [defendant Mitchell's immunity] turn[ed] on whether it was clearly established [on the date of authorizing certain warrantless wiretaps] that such wiretaps were unconstitutional," 472 U.S. at 530, 105 S.Ct. at 2818, which, as the Court stated, is a "purely legal question," *id.,* 105 S.Ct. at 2817. The *Mitchell* holding reserved a margin for error, however, by stating that a denial of a defendant's qualified immunity claim is an appealable final order *"to the extent* that it turns on an issue of law." In so qualifying its holding, the Court no doubt envisioned a situation where the district court, unable to answer the purely legal question because it cannot on the basis of the facts presented identify plaintiff's allegations, *defers* its ruling on the merits of the qualified immunity claim until it is able to identify and resolve the legal question. (This situation arose in *Riley v. Wainwright*, 810 F.2d 1006 (11th Cir.1986), discussed at length in the text.) For I submit that a district court's rejection of a pre-trial qualified immunity defense always turns on an issue of law.

A defendant may assert his qualified immunity defense, prior to trial, in one of three ways, all of which require the court to consider an issue of law. First, a defendant may move for dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *See Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir. 1984) ("[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations reveal the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint"), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1992, 1993, 90 L.Ed.2d 673 (1986); *Green v. Maraio,* 722 F.2d 1013, 1019 (2d Cir.1983) (affirmative defense of qualified immunity may be asserted in Rule 12(b)(6) motion when "complaint itself establishes ... qualified immunity"); *see also* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 at 609 (1969 & Supp.1989). The district court then examines the complaint to see whether the allegations themselves reveal the existence of the qualified immunity defense, i.e., whether, under the most favorable version of the facts alleged, defendant's actions violate clearly established law—a "purely legal question." *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817.

Second, the defendant may raise his affirmative defense in his answer and move under Fed.R.Civ.P. 12(c) for judgment on the pleadings. The district court does not attempt to determine whether there are factual disputes, let alone resolve them, but examines only the pleadings; it grants the motion if the plaintiff alleges only actions that "a reasonable officer could have believed lawful," *see Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987), and denies the motion if the plaintiff alleges actions that violate clearly established law or if the defendant alleges only actions that a reasonable officer could not have believed lawful, *see Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816. The defendant may invoke the same analysis by moving for summary judgment under Fed.R.Civ.P. 56(b), which, if no additional material is presented for the court's consideration, will be treated by the court as a motion for judgment on the pleadings. *See* 5 C. Wright & A. Miller, *supra* § 1372.

Third, the defendant may present matter outside the pleadings and move for summary judgment under Fed.R.Civ.P. 56(e). The district court then examines the submitted evidence in the light most favorable to the plaintiff in order to determine whether the defendant is nonetheless entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The court considers in the light most favorable to the plaintiff all facts fairly inferrable from the record—regardless of the existence of factual disputes—and decides whether, under those facts, defendant's conduct violated law clearly established at the time. If the district court rejects the qualified immunity defense, that decision rests on the court's determination that the inferrable facts, if true, constitute violations of clearly established law by the defendant. That determination, whether in the context of a Rule 56(b) or (e) motion for summary judgment, a motion to dismiss for failure to state a claim, or a motion for judgment on the pleadings, is a legal determination and, under the *Cohen* collateral order doctrine, results in an appealable judgment.

**3.** Two cases cited by the court today, *Williams v. Cash,* 836 F.2d 1318 (11th Cir.1988), and *Perry*

we may, without fear of compromising our jurisdiction, examine the plaintiff's claim directly. If we affirm the district court, we may base our affirmance on the ground that the plaintiff failed to present any claim at all, rather than on the defendant's entitlement to qualified immunity because his conduct did not violate law clearly established at the time.

Our jurisdiction becomes problematic only when the district court *denies* a pretrial motion based on a qualified immunity defense. A district court's denial of a pretrial motion, such as a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings or for summary judgment, is generally not a reviewable final order under section 1291. It is the qualified immunity defense that gives us jurisdiction to review a denial of such a motion in order to protect effectively the defendant's "claim of right" to avoid litigation—a claim that must, under *Cohen*'s collateral order doctrine, be "separable from, and collateral to, rights asserted in the action." *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225–26. In deciding the qualified immunity issue, however, the district court considers whether the defendant's conduct as presented—whether gleaned from the complaint or the record as a whole—did or did not violate law that was clearly established at the time. The district court's denial of the motion thus contains the implicit determination that the plaintiff has presented a claim for which the law ordinarily provides relief; otherwise, defendant would be necessarily immune because his conduct could not have violated clearly established law. Similarly, appellate review, although limited to "issue[s] of law," must entail consideration of the *factual underpinnings* of the plaintiff's claim for relief in order to assess the defendant's entitlement to immunity. This court might disagree with the district court that these factual underpinnings make out a claim for relief—an issue that we normally lack jurisdiction to decide on an interlocutory appeal—but our jurisdiction, based as it is on the immunity defense, is nonetheless uncompromised: if the plaintiff has no claim

upon which relief can be granted, the defendant necessarily has qualified immunity, for under no version of the facts presented did his conduct violate clearly established law. Our rationale may embrace the plaintiff's underlying claim, but we consider that claim only insofar as its factual support establishes defendant's immunity from suit.

Contrary to the court's suggestion today, this circuit has recognized that the existence of factual disputes in such a case does not affect our jurisdiction and has frequently followed the analysis outlined by the Supreme Court in *Mitchell*. *See, e.g., McDaniel v. Woodard*, 886 F.2d 311, 313–14 (11th Cir.1989); *Rich v. Dollar*, 841 F.2d 1558, 1560–61 (11th Cir.1988). *See generally Green v. Brantley*, 895 F.2d 1387, 1395 (11th Cir.1990) (Kravitch, J., specially concurring). According to *Mitchell*, "[a]ll [an appellate court reviewing the denial of the defendant's claim of immunity] need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions...." *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816; *see id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9 ("the appealable issue is a purely legal one: whether the *facts [presented]* ... support a claim of violation of clearly established law" (emphasis added)).

In support of its characterization of this circuit's precedent, the court cites *Riley v. Wainwright*, 810 F.2d 1006, 1007 (11th Cir. 1986). In *Riley*, a panel of this court stated that it could not review the district court's denial of the defendants' summary judgment motion based on a claim of qualified immunity because that denial "did not turn on an issue of law." *Id.* The panel reported that the district court had denied the motion because "factual development" was required before the district court could "determine[ ] with finality whether Riley had been subjected to a constitutional deprivation and, if so, whether some or all of the defendants were entitled to the benefit of qualified immunity." *Id.* The *Riley* panel then held that the district court's

---

*v. Thompson*, 786 F.2d 1093 (11th Cir.1986), involve appellate review of district court decisions *granting* summary judgment based on defendants' claims of qualified immunity.

decision was not an appealable final order. *Id.*

This reference to "factual development" has led to disagreement in our circuit before. *See, e.g., Goddard v. Urrea,* 847 F.2d 765, 769 (11th Cir.1988); *id.* at 770 (Johnson, J., dissenting) (*Riley* distinguishable because "factual development" in *Goddard* adequate; appellate court should have assumed plaintiff's version of facts and decided immunity issue); *see also supra* note 1. Although *Riley*'s language may be confusing, I believe that its holding, correctly understood, is sound. I also suggest that the situation in *Riley* was that envisioned by the Supreme Court when it qualified its holding in *Mitchell* by stating that the denial of a qualified immunity defense is appealable "to the extent that it turns on an issue of law." *See supra* note 2.

As I read *Riley,* the plaintiff's *pleadings* were not sufficiently developed to permit the district court to identify, and then to assume as true, a particular set of facts. In denying summary judgment until the complaint's factual allegations had been further developed, the district court's decision implied that the court would have granted a Fed.R.Civ.P. 12(e) motion for more definite statement, had the defendant-official initially moved for one. Similarly, had the defendant asserted his qualified immunity defense by moving under Fed.R.Civ.P. 12(b)(6) for dismissal for failure to state a claim, *see supra* note 2, the district court would no doubt have permitted the plaintiff to amend his complaint in order to spell out his factual contentions and only then would have reached the question of qualified immunity. Because the defendant made neither motion, but moved instead for summary judgment on the ground of qualified immunity, the district court simply deferred final decision on the immunity question until the plaintiff's pleadings were sufficiently "developed" for the court to identify the factual contentions and to assess the merits of the qualified immunity defense in light of the facts presented. Since the district court's denial of the "motion for summary judgment based on qualified immunity" was, in ef-

fect, a *deferral* of any ruling on the qualified immunity issue, it was not an appealable final order within the meaning of *Mitchell,* and this court lacked jurisdiction to review it.

In sum, pre-trial qualified immunity analysis directs the court to assume "the validity of the plaintiff's version of the facts and then examine[ ] whether those facts 'support a claim of violation of clearly established law.' " *Goddard,* 847 F.2d at 769 (Johnson, J., dissenting). The existence of factual disputes in the case is irrelevant. Where the plaintiff presents a set of facts that enable the district court to identify the plaintiff's allegations, the district court's decision that the facts presented, whether disputed or undisputed, support a claim that defendant's conduct violated clearly established law is a decision on a question of law. This court therefore has jurisdiction to review that decision.

For the foregoing reasons, I cannot agree with the court's statement limiting our jurisdiction to review a district court's denial of a motion for summary judgment based on qualified immunity.