[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2010
JOHN P. LEY
ACTING CLERK

_____

No. 08-15612
Non-Argument Calendar

_____

D. C. Docket No. 96-14176-CV-KAM

DAVID LEE BROWN,

Plaintiff-Appellant,

versus

ACTING DIRECTOR OF METRO DADE
CORRECTIONAL, et al.,

Defendants,

L. WESTON,
personally and In Their Official Capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 7, 2010)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Following a bench trial and a remand by this Court for further fact findings, plaintiff David Lee Brown, proceeding pro se, appeals the district court's judgment in favor of defendant Leroy Weston on Brown's 42 U.S.C. § 1983 excessive force claim. After review, we affirm.

## I. BACKGROUND

### A. First Bench Trial

Brown's excessive force claim arises out of an altercation that occurred while he was housed as a pre-trial detainee at the Metro-Dade West Correctional Facility. Brown was preparing to be transported to Broward County for a court appearance when he got into an argument with corrections officer John Cowan about bringing a change of clothes. Defendant Weston, the supervising corrections officer on duty, responded to Cowan's call for back-up. What happened next was hotly disputed at trial.

In a nutshell, Brown testified that Weston punched him in the mouth twice without provocation, resulting in Brown losing one tooth and needing medical treatment and a wire brace for two other loose teeth. Weston, on the other hand, testified that Brown behaved aggressively and lunged at Cowan and Weston and that in response Weston used a routine takedown procedure in which he pushed

2

Brown against a wall, spun him around and handcuffed him.

At the conclusion of the trial, the district court entered judgment in favor of defendant Weston, finding that Weston was entitled to qualified immunity.[1] However, the district court did not make explicit fact findings about the precise nature of the altercation between Brown and Weston and the force Weston used.

## C.    Appeal and Remand

On appeal, this Court vacated and remanded the excessive force claim against Weston for further proceedings.  We explained that the district court's factual findings did not resolve the factual dispute as to: (1) "whether Plaintiff Brown lunged or otherwise reasonably posed a danger to Defendant Weston as Weston asserted"; (2) the type of force Weston used on Brown; and (3) whether the type of force was consistent with the jail's force policy.  Accordingly, we remanded for the district court to "make express fact findings about the specific physical conduct, or lack thereof, of both Plaintiff Brown and Defendant Weston and then should determine, applying the Whitley factors . . . , whether Defendant Weston's conduct violated Plaintiff Brown's constitutional rights under the Eighth and Fourteenth Amendments."  We further explained that the district court needed

---

[1]Brown also sued Charles Felton, the Director of Metro-Dade Correctional Facility in his official capacity for deliberate indifference to his medical needs and safety.  The district court found in favor of Defendant Felton, and this Court affirmed the judgment in the first appeal.

3

to "find who did what and when and then should evaluate and decide whether Defendant Weston's use of force was applied in a good faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm."

## C.    Second Bench Trial

On remand, the original trial judge recused himself, and the successor judge held a hearing for the purpose of recalling witnesses to testify regarding the disputed factual issues. The parties stipulated to the following: (1) Weston observed a portion of the verbal altercation between Brown and Cowan and responded when Cowan called for assistance; (2) Weston approached Brown and ordered that he apologize for his behavior toward Cowan; (3) after the incident between Brown and Weston, Weston took Brown to the infirmary, where he received a saline solution to rinse his mouth; (4) Brown was placed in a holding cell awaiting transfer to Broward County; (5) officers from Broward County refused the transfer, and, upon complaining of pain, Brown was taken back to the infirmary and transported to the hospital; (6) medical personnel determined that two of Brown's lower teeth were knocked out of their sockets and another knocked loose; and (7) Weston was acting within the scope of his discretionary authority at the time of the incident.

At the hearing, Brown testified consistently with his original trial testimony

that after he refused to apologize, Cowan hit him in the lower lip with his closed, ringed fist, and that Brown never lunged or jumped at Weston. After Brown bent over and looked back up, Weston hit him again with a closed fist, dislodging a tooth. Weston again told Brown to apologize. Brown put the tooth in his pocket and apologized to Cowan. Weston then took Brown to the infirmary. After Brown was seen by the nurse, Weston told Brown he was sorry and escorted him to the transport bus. Brown was not knocked to the ground by Weston's blows, his lips were not broken, and he bled only inside his mouth.

Weston, on the other hand, testified that as he approached he had Brown and Cowan move out of the cell and into the hallway. Brown was angry, would not listen and kept moving around. Brown then lunged at Weston and Cowan, so Weston applied a spin-around technique in which he pushed Brown away from him, spinning him toward the wall, and then held him against the wall until he could handcuff him. When Brown turned around, Weston noticed a small amount of blood, so he took Brown to the infirmary.

Weston denied punching Brown in the mouth, explaining that, under the circumstances, he did not need to punch Brown and would not have been justified in doing so. When Weston pushed Brown against the wall, his intent was to secure Brown so he would not be a threat and the argument would not escalate.

5

Weston admitted that his report prepared immediately after the incident stated that Brown took an aggressive stance and began cursing and threatening to attack Cowan, but did not state that Brown lunged or jumped at either officer. Weston explained that, because he managed to intervene and prevent the attack, he did not list Brown's actions as an attack.

In addition, Dr. Jay Stein, an orthopedist, testified that, based on the photographs, the witnesses' statements, and the medical records, he believed that it was more likely that Brown sustained his injuries by hitting a flat surface, like a wall, than by a closed-fist punch to the face. In particular, Dr. Stein testified that a closed-fist punch would have resulted in injuries to the person delivering the punch and injuries to the soft tissues of Brown's lips and face. On the other hand, because a wall is an immobile, flat surface, the tissue in the mouth could be injured without external injuries. On cross-examination, Dr. Stein admitted that he had not examined Brown, Weston, or the site of the incident.

Leonard McMullen, a supervisor in internal affairs at Metro-Dade Correctional Facility, testified that the jail policy permitted an officer to use whatever force was necessary to gain control of an inmate who lunges or jumps at the officer. McMullen testified that, during the investigation, Brown gave a statement that Weston punched him in the face when he refused to go apologize to

6

Cowan, he fell to the floor, one tooth fell out, and Weston punched him again while he was on his knees. According to McMullen, jail policy requires that an officer submit an injury report if he is injured at the prison, and Weston did not file an injury report after the incident with Brown.

The defense recalled Brown, who testified that he refused medical treatment to have the wire in his mouth removed, and he had not requested any dental treatment since June 1995. The defense then read into the record portions of testimony from the first bench trial, including (1) correctional officer Rafael Pedrero's testimony regarding his observation of the altercation between Weston and Brown,[2] (2) correctional officer Maria Escobar's testimony regarding Brown's statement that he was hit,[3] (3) Arthur Brown's testimony assessing Brown's

---

[2]Officer Pedrero testified that he heard loud noises coming from the hallway outside Brown's cell and saw Brown cursing at Cowan. While guarding other inmates, Pedrero saw Weston walk down the hallway in response. After sending other inmates downstairs, Pedrero returned to see Weston with Brown, who was leaning up against the wall. Pedrero testified that: (1) he heard Brown using racially derogatory remarks toward Cowan; (2) he observed Weston attempting to calm Brown verbally, (3) Brown was acting aggressively before the incident; (4) both Cowan and Weston appeared calm after the incident; (5) Brown apologized to Weston for his behavior with Cowan; and (6) he did not see any injuries on Brown. On redirect examination, Pedrero stated that his addendum to the incident report did not indicate that Brown jumped or leapt at Weston, which he would have included had he observed such a thing.

[3]Officer Escobar testified that, when she took Brown's telephone complaint four months after the incident, Brown did not mention Cowan or that he was punched twice and lost teeth, but only that he was hit, pushed by and told to apologize to one of the officers.

medical records and concluding that his injuries were inconsistent with a punch.[4]

The district court entered judgment in favor of Defendant Weston. In its order, the district court credited Weston's testimony over Brown's testimony and found that Brown lunged at Weston and Cowan, leading Weston to push Brown against the wall to subdue and handcuff him, which caused Brown's injuries, as follows:

> Defendant stopped Plaintiff before Plaintiff reached the elevators and told Plaintiff that he did not like the way Plaintiff treated Officer Cowan, and that Plaintiff owed Officer Cowan an apology. Plaintiff became enraged while listening to Officer Cowan explain to Defendant what had transpired. Plaintiff was out of control, he would not listen to reason and he would not stay still. Plaintiff then took an aggressive stance and lunged at Defendant and Officer Cowan. In an effort to control Plaintiff and protect himself and Officer Cowan from potential attack, Defendant spun Plaintiff around, turning Plaintiff's shoulders and pushing his own weight against Plaintiff. Because Plaintiff was standing next to a wall, Defendant pushed Plaintiff against the wall in order to subdue and handcuff him. The push against the wall while Defendant was attempting to protect himself and Officer Cowan from a perceived attack is what caused the injury to Plaintiff's mouth. The Court rejects Plaintiff's testimony that Defendant punched him.

In a footnote, the district court explained that, while it found that Weston "was credible and exuded professionalism," Brown "was not credible and his testimony

---

[4]Arthur Brown, a registered nurse and the Director of Patient Care Services at the jail, testified that plaintiff Brown was sent to the hospital, diagnosed with a contusion and three loosened teeth, but no fractures, lacerations or swelling, and released the same day. Brown opined that these injuries were inconsistent with someone being punched twice with a large, ringed hand.

regarding this incident provided no reasonable basis for finding that Defendant punched him." The district court noted that Brown's injury was consistent with the testimony of both Weston and Dr. Stein.

Based on these facts, the district court concluded that Weston was entitled to qualified immunity. The court found that Weston was acting within the scope of his discretionary authority and that the force he used was to maintain order in the jail. The district court explained (1) that the force was required to prevent an attack after Weston reasonably perceived Brown taking an aggressive stance and lunging and (2) that Weston's decision to spin Brown around and push him against the wall for handcuffing was a reasonable response to the perceived threat. Accordingly, despite the significant, though accidental, injury that occurred, the district court found that the amount of force Weston used was reasonable under the circumstances to restore order and was not applied maliciously and sadistically for the purpose of harming Brown. Brown appealed.

## II. DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment governs a prisoner's claim that a prison official used excessive force. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth

9

Amendment's Due Process Clause, rather than the Eighth Amendment. Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). Because the applicable standard is the same, however, courts apply Eighth Amendment caselaw to cases involving arrestees and pretrial detainees. Id. In the context of a measure taken to prevent a security threat or to restore official control, the inquiry is whether "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitely v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 1085 (1986) (quotation marks omitted).

The Supreme Court has identified five factors, commonly called the Whitley factors, to consider in determining whether force was used "maliciously and sadistically" for the purpose of causing harm: (1) the extent of the injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Campbell, 169 F.3d at 1375. From consideration of these factors, inferences may be drawn as to "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Skrtich

10

v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002). Prison officials who are "acting to preserve discipline and security," including during a disturbance, are given "a 'wide range of deference." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)). Nevertheless, deference to prison officials is not absolute and does not insulate from review actions taken in bad faith or for no legitimate purpose. Ort v. White, 813 F.2d 318, 322 (11th Cir. 1987).

Under qualified immunity analysis, after the public official proves that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991). Ordinarily, to defeat qualified immunity, a plaintiff must show that (1) a constitutional violation occurred, and (2) the constitutional right violated was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001), abrogated in part by Pearson v. Callahan, 555 U.S. __, __, 129 S.Ct. 808, 818 (2009) (holding that district courts now have discretion as to the order in which to address the two prongs).

We review a district court's bench trial findings of fact for clear error and its conclusions of law de novo. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th

11

Cir. 2001); see also Fed. R. Civ. P. 52(a) (providing that a district court's findings of fact in a non-jury trial "must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility"). "For a finding to be clearly erroneous, the reviewing court, looking at all the evidence, must be left with the definite and firm conviction that a mistake has been committed." Daley v. United States, 792 F.2d 1081, 1086 (11th Cir. 1986) (quotation marks omitted). We will not reverse "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," even if we, sitting as the trier of fact, would weigh the evidence differently. Id. (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 1511 (1985)). Further, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson, 470 U.S. at 575, 105 S. Ct. at 1512; see also Stano v. Butterworth, 51 F.3d 942, 944 (11th Cir. 1995) (explaining, based on Anderson, that "we will give even 'greater deference' to factfindings of the district court that are based on determinations of the credibility of witnesses").

Here, the district court found by a preponderance of the evidence that Brown

12

became "enraged," "would not listen to reason" and "would not stay still" after Weston intervened and Officer Cowan tried to explain the situation to Weston. When Brown "took an aggressive stance" and then lunged at the two officers, Weston spun Brown around and pushed him against the wall, causing the injury to Brown's mouth. Weston used this maneuver to prevent Brown from attacking him and Officer Cowan. Although Brown's injury was significant, it was accidental.

These findings are supported by substantial evidence, including the testimony of Officers Weston and Pedrero and the medical opinions of Dr. Stein and Nurse Brown. Brown's argument that the district court's verdict is not supported by the evidence relies upon his version of events. However, the district court explicitly discredited his testimony and credited Weston's testimony as to what transpired. Brown has not shown that Weston's testimony was facially implausible, internally inconsistent or contradicted by extrinsic evidence. Rather, Weston's testimony is contradicted only by Brown's testimony. Given the great deference we give to a district court's credibility findings, the district court's fact findings are not clearly erroneous.[5]

---

[5]We reject Brown's argument that the district court exceeded the scope of this Court's mandate by making findings of fact as to what happened during the altercation. This Court specifically concluded that the qualified immunity issue could not be resolved until the district court in the first instance made specific fact findings regarding the sequence of events, i.e., "who did what and when."

13

Further, given the established facts, the district court did not err in concluding that Weston applied force in a good faith effort to maintain and restore discipline and not maliciously and sadistically for the purpose of causing Brown harm. In applying the Whitley factors, we agree with the district court that force was needed to prevent an attack and maintain order in the jail. At the time, Brown was unrestrained and standing in the hallway outside his cell. Weston reasonably perceived Brown as a physical threat when he became "extremely agitated" and lunged at the officers. Further, the amount of force Weston applied – spinning Brown around and pushing him against the wall so that he could handcuff him – was reasonable in light of Brown's actions. Although Brown's injury was not insignificant, "this factor alone is not dispositive." See Cockrell, 510 F.3d at 1311. The injury was not inflicted maliciously, as evidenced by the fact that, as soon as the altercation ended, Weston took Brown to the infirmary for medical attention and even apologized to Brown. Furthermore, it does not appear the injury reasonably could have been anticipated based on the amount of force applied. Accordingly, no constitutional violation occurred, and Weston is entitled to qualified immunity.

**AFFIRMED.**

14