**Sylvia DANIEL, Plaintiff-Appellant,**

v.

**Earl TAYLOR, Keith Dunkel, Bernadette Hernandez, Fred Woodward, Ernest Dorling and Tommy Pritchard, Defendants-Appellees.**

No. 86–8258
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Sept. 24, 1986.

Daniel Kane, Jake Arbes, Atlanta, Ga., for plaintiff-appellant.

Myles Eastwood, Robert T. Ross, Asst. U.S. Atty., Atlanta, Ga., for defendants-appellees.

Gary S. Walker, Atlanta, Ga., for Hernandez.

Before FAY, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

This appeal presents the issue of whether law enforcement officers, who allegedly detained plaintiff for two hours and forty-five minutes without probable cause while searching for evidence pursuant to a search warrant, are entitled to qualified immunity because they did not violate a clearly established constitutional right of the plaintiff. The district court granted summary judgment to the defendants on immunity grounds, and we affirm.

On June 13, 1985, a United States magistrate issued a federal search warrant authorizing a search of the premises of S.W. Daniel, Inc. ("S.W.D.") for certain business records constituting evidence of possible violations of the National Firearms Act. At 2:15 p.m. on the same day, the defendants—agents of the Bureau of Alcohol, Tobacco and Firearms ("A.T.F.") and an Atlanta police officer—arrived at the named location. An A.T.F. agent showed the search warrant to plaintiff Sylvia Daniel, the proprietor of S.W.D. During the initial portion of the search, the officers required plaintiff to remain on the business premises.

The parties dispute the length of plaintiff's detention. According to plaintiff, she was allowed to leave sometime between 4:30 p.m. and 5:00 p.m. According to defendants, she was required to remain and did remain on the premises for approximately thirty minutes of the search.

Plaintiff subsequently filed this *Bivens* (*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)), and § 1983 lawsuit against defendants, alleging that her detention violated her constitutional rights. In addition, her complaint raised state law tort claims against the defendants. The district court granted summary judgment for the defendants, on the grounds that defendants had qualified immunity from the constitutional claims and absolute immunity from the state law claims.

Since plaintiff has not mentioned on appeal the issue of absolute immunity from state law tort claims, we deem this issue to be abandoned. *See Rogero v. Noone*, 704 F.2d 518, 520 n. 1 (11th Cir.1983). The sole issue in this appeal is whether defendants are entitled to qualified immunity from plaintiff's constitutional tort claims.

The doctrine of qualified immunity applies both to plaintiff's *Bivens* action against the federal defendants and plaintiff's § 1983 action against the Atlanta police officer. *See Harlow v. Fitzgerald*, 457 U.S. 800, 819 n. 30, 102 S.Ct. 2727, 2738 n. 30, 73 L.Ed.2d 396 (1982). Under the qualified immunity doctrine, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate "clearly established ... constitutional rights" of which a reasonable person should have known. *Id.*, 457 U.S. at 819, 102 S.Ct. at 2738.

Nothing in the record suggests that defendants had probable cause for detaining Ms. Daniel, as opposed to searching the business premises. Moreover, since we are reviewing a summary judgment, we must resolve all factual ambiguities in favor of the party opposing the motion. *Wilson v. Taylor*, 658 F.2d 1021, 1023 (5th Cir. Unit B 1981).[1] Thus, we assume that Ms. Daniel was detained for two hours and forty-five minutes (i.e., until 5 p.m.). To analyze

---

1. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit

Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

whether defendants are entitled to qualified immunity, we must determine whether defendant's detention of the plaintiff without probable cause while executing a search warrant violated a "clearly established" constitutional right.

As a general rule, an official seizure of a person must be supported by probable cause, even if no formal arrest is made. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The Supreme Court, however, has carved exceptions from this rule where a limited intrusion on a citizen's privacy is justified by special law enforcement interests. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 889 (1968) (even though no probable cause exists, an officer can "frisk" for weapons if he reasonably believes he is dealing with an armed and dangerous suspect); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (even though no probable cause exists, an officer can forcibly stop a suspect to investigate an informant's tip that suspect was armed and dangerous); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (even though no probable cause exists, roving Border Patrol agent can stop a vehicle near Mexican border if he is aware of specific articulable facts indicating that the vehicle contains illegal aliens.)

In *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), police officers detained a person while executing a search of a premises for drugs. Although a magistrate had determined that probable cause existed for the search, the Court assumed that probable cause did not exist for the detention of the person. *Id.*, 452 U.S. at 692, 702, 101 S.Ct. at 2591, 2593. The Court ruled that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conduct-

ed." *Id.*, 452 U.S. at 706, 101 S.Ct. at 2595 (footnote omitted).

In *Summers*, the Court explicitly reserved decision on "whether the same result would be justified if the search warrant merely authorized a search for evidence." *Id*, 452 U.S. at 706 n. 21, 101 S.Ct. at 2595 n. 21. The present case involves a search for evidence rather than contraband, since the defendants searched for business records. If *Summers* extends to this case, of course, defendants did not violate plaintiff's fourth amendment rights and need no immunity. We do not decide now whether the *Summers* rule extends this far.

■  To be entitled to qualified immunity, defendants need only show that it is an unsettled question of law whether *Summers* would be extended to this case. An examination of the Supreme Court's rationale in *Summers* indicates that it is not clear whether *Summers* would be extended to the present case. When determining whether a detention during a search for contraband pursuant to a search warrant is constitutional, the *Summers* Court weighed the intrusiveness of the detention, the law enforcement interests served thereby, and the individualized and articulable suspicion justifying such detention.

The *Summers* Court began by considering the intrusiveness of the detention. The Court reasoned that (1) detention only adds minimally to the intrusion of the search itself, and most persons would prefer to remain to observe a search; (2) the police would not be likely to exploit or unduly prolong the detention to gain information; (3) a detention at home adds only minimally to the public stigma associated with the search. *Id.*, 452 U.S. at 702–03, 101 S.Ct. at 2593–94. The first of these "intrusion" rationales is clearly applicable in the present context, and nothing in the record[2]

**2.** Plaintiff has attempted to supplement the record on appeal with evidence suggesting that defendants used the search as a pretext for detaining plaintiff so that they could arrest her when a grand jury indicted her later that day. This evidence consists of depositions taken in

another case involving different litigants, after the district court granted summary judgment in the present case. When reviewing the summary judgment, however, this Court cannot consider evidence which was not before the district court. *See Drexel v. Union Prescriptive Centers,*

suggests the second is not. Since plaintiff was detained on business premises which she owns, it can be argued that the detention added only minimally to the public stigma of the search. On the other hand, it can be argued that plaintiff was embarrassed "in public" by being detained with her employees. Thus, it is not clear whether the third "intrusion" rationale of *Summers* applies.

Next, the *Summers* Court considered the law enforcement interests which would be served by permitting the detention: (1) preventing flight in the event that incriminatory evidence is found, (2) minimizing the risk of harm to the officials, and (3) facilitating the orderly completion of the search, inasmuch as the detained occupant may, out of self-interest, open locked doors or locked containers. *Id.*, 452 U.S. at 703–04, 101 S.Ct. at 2594. Since the defendants in the present case allowed plaintiff to leave before the completion of the search, the first of these law enforcement rationales may not be applicable. The second and third rationales, however, clearly do apply to the present case.

Finally, the *Summers* Court considered the nature of the articulable and individualized suspicion on which the police base the detention of an occupant of premises subject to a search warrant. According to the Court, the fact that a search warrant has been issued means that:

> [a] judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime.... The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining suspicion of criminal activity justifies a detention of that occupant. *Id.*, 452 U.S. at 704–05, 101 S.Ct. at 2594–95.

This rationale is not applicable to a search for evidence, because the existence of mere evidence, as opposed to contraband, on the premises does not suggest that a crime is being committed on the premises.

Lower court case law has not settled this area of law. In dictum in a string citation, the Eleventh Circuit has cited *Summers* as authority for allowing detention of occupants while authorities search the premises pursuant to a search warrant, without distinction as to whether the search is for evidence of contraband. *See United States v. Puglisi*, 723 F.2d 779, 785 (11th Cir. 1984). Without analysis, the Fourth Circuit has held that officers may detain an occupant during a search for evidence pursuant to a search warrant, and cited *Summers* as authority for that holding. *United States v. Smith*, 704 F.2d 723, 725 (4th Cir.), *cert. denied, sub nom. Palmer v. Smith*, 464 U.S. 817, 104 S.Ct. 76, 78 L.Ed.2d 88 (1983). Of course, neither of these decisions represent binding precedent on this point.

Plaintiff argues that her detention was so prolonged as to render the *Summers* exception clearly inapplicable in her case. She points to decisions which indicate that detentions without probable cause must be of short duration. In *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court approved an agent's brief detention of a suspected drug courier's luggage, but held that the detention became unreasonable in the absence of probable cause when it continued for 90 minutes. The Court stated

> although we have recognized the reasonableness of seizures longer than ... momentary ones ..., the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion.... Thus, although we decline to adopt an outside time limitation for a permissible *Terry* stop, we have never approved a seizure of the person for the prolonged 90–minute period involved here and cannot do so

582 F.2d 781, 784 n. 4 (3d Cir.1978); *see generally* 10 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2716, at 650–54 (2d ed. 1983).

on the facts presented by this case. *Id.*, 462 U.S. at 709–10, 103 S.Ct. at 2645–46. Plaintiff also cites *United States v. Puglisi*, 723 F.2d 779 (11th Cir.1984), in which the Eleventh Circuit held that detention of a suspected drug courier's luggage for approximately 140 minutes violated the fourth amendment. Plaintiff's argument is not persuasive, however, because in the above cases the police had obtained *no warrant whatsoever.*

In contrast, *Summers* involved detention during a premises search pursuant to a search warrant, and in *Summers* the court did not specify how long the detention lasted. The opinion of the Michigan Court of Appeals in the same case, however, suggests that the detention was not short: Summers was detained during the time it took a police officer "to search the whole house" and find heroin under a bar in the basement. *People v. Summers*, 68 Mich. App. 571, 243 N.W.2d 689, 691 (1976), *aff'd*, 407 Mich. 432, 286 N.W.2d 226 (1981), *rev'd*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The Supreme Court's comment in *Summers* that "possibly a prolonged detention ... might lead to a different conclusion in an unusual case," 452 U.S. at 706 n. 21, 101 S.Ct. at 2595 n. 21, does not clearly establish that a detention of an occupant of the premises during the first two hours and forty-five minutes of a search is impermissible.

Since the dissenters in *Summers* expressly raised the point, the *Summers* majority apparently appreciated that the concept of detention during searches of premises entails the prospect of detentions lasting several hours. *Michigan v. Summers*, 452 U.S. 692, 712, 101 S.Ct. 2587, 2598, 69 L.Ed.2d 340 (1981) (Stewart, J., dissenting). Nevertheless, we do not hold that the de-

tention in this case complied with the Constitution; we do not even address that question. Instead, we just recognize that the law is ambiguous as to when detention in conjunction with a lawful, premises search becomes impermissible.

■ Although it might not do so, the *Summers* exception to the requirement of probable cause might extend to the present case. The unsettled character of this legal question is evident and demonstrates that no "clearly established" fourth amendment[3] right of plaintiff was violated. Therefore, defendants are entitled to qualified immunity.

For these reasons, the judgment of the district court is AFFIRMED.

---

**3.** Plaintiff argues on appeal that defendants violated her sixth amendment right to counsel because they prevented her from speaking privately or face-to-face to her lawyer while she was detained. This Court will not consider this issue because, although plaintiff referred to a deprivation of her sixth amendment rights in her complaint, she made no other reference to this claim throughout the district court proceedings. For example, in the joint preliminary statement, there is no reference to a sixth amendment claim. Furthermore, in plaintiff's response to the federal defendant's motion for summary judgment, she mentioned nothing about the sixth amendment claim. "Failure to brief and argue an issue [at the district court level] is grounds for finding that the issue is abandoned." *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1030 (5th Cir. Unit B 1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983).