[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/16/2000
THOMAS K. KAHN
CLERK

_____

No. 98-3171

_____

D. C. Docket No. 97-305-CIV-T-23E

CUMI KELLY WOOD, individually, and as parent and next of kin of Clark Mitchell Thomas, Deceased, and as Personal Representative of the Estate of Clark Mitchell Thomas,

Plaintiff-Appellee,

versus

CITY OF LAKELAND, FL, a municipality, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida Tampa Division

_____

**(February 16, 2000)**

Before EDMONDSON and BIRCH, Circuit Judges, and OWENS*, Jr., Senior District Judge.

_____

*Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge for the Middle District of Georgia, sitting by designation.

OWENS, Jr., Senior District Judge:

Plaintiff Cumi Kelly Wood as the mother of her deceased son, Clark Mitchell Thomas, filed a complaint[1] alleging 42 U.S.C. § 1983 claims against the City of Lakeland, Florida and its Police Officer Tye Darron Thompson in which she contended that Officer Thompson, in violation of her deceased son's constitutional rights, unnecessarily shot and killed him. Officer Thompson moved for summary judgment, contending that qualified immunity shields him from individual liability for the constitutional claims asserted against him, citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 393 (1982). A United States magistrate judge denied Officer Thompson's motion for qualified immunity, finding that genuine issues of material fact prevent the granting of Officer Thompson's motion. Officer Thompson filed this interlocutory appeal in which he contends the magistrate judge erred in finding the existence of a genuine issue of material fact.

The denial of summary judgment for a qualified immunity claim is immediately appealable as a final decision under 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Our review in determining entitlement to qualified immunity is de novo. See Pickens v. Hollowell,

_____

[1]Plaintiff's complaint alleged various federal and state claims. Since this appeal concerns only Count One and 42 U.S.C. § 1983, the other claims will not be summarized.

2

59 F.3d 1203, 1205 (11ᵗʰ Cir. 1995). In reviewing denials of summary judgment based on qualified immunity, our inquiry is limited to deciding if the facts, viewed in the plaintiff's favor, show a genuine dispute on facts material to the qualified immunity analysis. <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11ᵗʰ Cir. 1993)(citing <u>Daniel v. Taylor</u>, 808 F.2d 1401, 1402 (11ᵗʰ Cir. 1986)).

The following portion of the magistrate judge's findings of undisputed fact are not contested by Officer Thompson, the City of Lakeland or plaintiff Wood:

> The undisputed facts in this cause establish that on February 12, 1995, Officer Tye Thompson shot and killed Clark Mitchell Thomas (hereinafter "Mr. Thomas") at a residence in Lakeland, Florida. The Lakeland Police Department had been summoned to the residence by members of Mr. Thomas's family, who reported that he was injuring himself and threatening suicide. When the police were unable to talk Mr. Thomas into exiting from the residence, a rescue/entry team consisting of five officers was assembled with the intention of securing Mr. Thomas for commitment under the "Baker Act." By the entry plan, Officer Smith was to enter first, carrying a ballistic shield. He was following by Officer Tye Thompson, who was designated to be the shooter in the event a firearm was necessary. These officers were followed by two officers who were to effect the rescue of Mr. Thomas. The final officer to enter the room was Sergeant Link, who carried a gas canister in the event it was necessary to use gas to subdue Mr. Thomas. Upon entering the residence, the officers observed evidence of blood. In the rear bedroom where Mr. Thomas was located, entry was made by Officer Smith kicking open the door. Mr. Thomas was observed to be sitting on a dresser at the end of a bed. The officers observed that his arms were covered with blood and that he

was clenching some type of object, which he held to the right side of his neck. He yelled to the officers to get out of the room. The officers identified themselves as Lakeland police officers and ordered Mr. Thomas to drop the knife numerous times. When Mr. Thomas declined to do so and thereafter slid off the dresser, he was shot three times in the chest by Officer Thompson, from a distance of approximately eight feet.

but the remainder of the magistrate judge's findings are contested by Officer Thompson and the City of Lakeland, to wit:

Mr. Thomas's actions immediately before the shooting are dramatically in dispute. By the officers' versions, Mr. Thomas was shot because he posed a threat of injury to the officers. By their version, when he slid off the dresser, he moved toward them with the knife extended in a threatening manner. By Plaintiff's version, the decedent posed no immediate threat to any of the officers and in fact was shot while his hand was still in a position threatening injury to himself. This conclusion is derived chiefly from the autopsy report of the county medical examiner. By his matching of bullet wounds, the physical evidence suggests that Mr. Thomas's right arm was flexed and somewhat raised when the bullets passed through the arm into his chest. Such forensic evidence materially contradicts the officers' versions by which the decedent had lowered the knife and had extended it toward the officers in a threatening manner. Plaintiff also relies upon the expert opinion of a Hillsborough County, Florida sheriff's detective who opines that from a review of the shooting scene, the decedent's path to the officers was obstructed at the time of the shooting and in any event, the entry and exit wounds reveal that he was making no threatening gesture to the officers at the time he was shot.

4

Reviewed *de novo* this record indicates that the only persons who were in the bedroom and in position to see or hear the events that resulted in the death of Mr. Thomas were Officer Thompson and other officers of the City of Lakeland Police Department. Neither the plaintiff mother nor any other family member was in position to see or hear what happened in the bedroom, and they do not contend they were. With due respect for the views of the magistrate judge, the autopsy report also reviewed *de novo* is not evidence indicating that the deceased did or did not pose a threat to any of the police officers at the time of the shooting. Likewise, the after-the-fact opinion of a Hillsborough County sheriff's detective that the entry and exit wounds reveal the deceased was making no threatening gesture to the officers at the time he was shot, is not supported by or based upon any evidence in the record. See, Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 93-94 (1st Cir. 1993). Concerned with these findings of the magistrate judge, this court at oral argument asked the parties to submit supplemental briefs identifying evidence in the record that could possibly show the deceased was not the aggressor and was not moving towards the officers when he was shot. Plaintiff Wood's counsel did not identify any such evidence.

Qualified immunity protects government officials who have acted within their discretionary authority from civil trials and other litigation burdens "if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable

5

person would have known.'" Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)(en banc)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The qualified immunity defense "embodies an 'objective reasonableness' standard, giving a government agent the benefit of the doubt," provided that the conduct was not "so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed" the acts. Crosby v. Paulk, 187 F.3d 1339, 1344 (11th Cir. 1999)(quoting GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998)). Because "we have 'rejected the inquiry into [an official's] state of mind in favor of a wholly objective standard,'" the government actor's intent and motivation are insignificant in determining entitlement to qualified immunity. Id. at 1344. (quoting Flores v. Satz, 137 F.3d 1275, 1277 n.4 (11th Cir. 1998)(per curiam)(alteration in original)(citation omitted)).

For a constitutional right to be clearly established, it "must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." Id. at 1345. (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). General rules, propositions, or abstractions, such as acting with probable cause, do not determine qualified immunity. Id. (citing Lassiter, 28 F.3d at 1150). Instead, the circumstances that confronted the government

actor must have been "materially similar" to prior precedent to constitute clearly established law because "public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." Id. (citations omitted). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Id.

The plaintiff opposing summary judgment has the burden of showing that a genuine dispute on a material issue of fact exists. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993)(citing Hutton, 919 F.2d at 1536). Conclusory allegations such as those we have rejected or evidence setting forth legal conclusions are insufficient to meet the plaintiff's burden. Id. (citing Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990)).

The proper test for qualified immunity as set out by this court is:

The objective nature of qualified immunity defines what fact issues are material for summary judgment purposes. To avoid summary judgment it is not enough for a plaintiff to produce evidence, which – if believed (for summary judgment its truth is assumed) – would allow a fact-finder to find just that the government-agent defendant was, in reality, wrong about the facts on which the defendant acted. Instead, to defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts. See Sims

7

v. Metropolitan Dade County, 972 F.2d 1230, 1234-35 (11th Cir. 1992)(illustrating what kinds of fact issues are material to qualified immunity).

Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

The Supreme Court, in Tennessee v. Garner, 471 U.S. 1 (1985), held that the use of deadly force is warranted only if the suspect takes action to present an immediate risk of serious harm to others or the officer. This Court held that the decision in Garner provided a bright line that established when an officer may use deadly force in apprehending a suspect. Harrell v. Decatur County, GA, 22 F.3d 1570, 1573 (11th Cir. 1994). Where the suspect is not a fleeing felon and poses no immediate threat to the officer or others, the use of deadly force is a violation of the suspect's Fourth Amendment Rights and, therefore, unconstitutional. Id. In Florida, the use of deadly force is governed by statute and, as noted by the parties, the statute is part of the Lakeland Police Department's policies. That statute provides, "any person is justified in using deadly force "only if he... reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself... or another...." Fla. Stat. ch. 776.012.

In sum, in order for the plaintiffs in this case to survive summary judgment on the basis of qualified immunity they must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought

the facts were such that deadly force was necessary to prevent imminent death or great bodily harm to himself or another. With this standard in mind, we examine the circumstances under which defendant Tye Darron Thompson acted in view of the clearly established law at that time to decide if his conduct was objectively reasonable.

The undisputed facts, as known to the defendant at the time of the incident, are that the officers were faced with confronting a known drug abuser, who had threatened to commit suicide, and who had attempted to commit suicide in the past. When they arrived at the scene, the officers were informed that Thomas had already cut his wrists. Upon entering the residence, the officers observed blood on the sidewalk outside, as well as throughout various rooms on the inside of the house. Ultimately locating Thomas in a small bedroom of the residence, the officers identified themselves as officers of the Lakeland Police Department. Thomas was repeatedly told to drop his weapon. Thomas, however, failed to drop the object clenched in his fist, and instead, hurled loud obscenities towards the five officers. Thomas eventually "slid off the dresser real quick with his momentum forward" toward the officers, box-cutter still in hand. Thomas came within six to eight feet of Officer Smith. Officer Thompson fired three shots in rapid succession mortally wounding Thomas.

Viewing the evidence in the light most favorable to plaintiffs, a fact finder could not find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts. To the contrary, Defendant Thompson acted as a reasonable officer would in light of the facts and circumstances facing him at the time. Defendant Thompson made a reasonable split-second judgment call, in light of Thomas' volatile, emotional, and aggressive state, to use deadly force in order to prevent imminent death or great bodily harm to himself or another. Defendant Thompson is therefore entitled to qualified immunity. The judgment of the lower court denying summary judgment on the issue of qualified immunity is therefore REVERSED.